UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALCIDES FERNANDO GUERRA FLORES (A-240-567-506), | No. 2:26-cv-0627 DJC CSK |
| Petitioner, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| CHRISTOPHER CHESTNUT, Warden of the California City Detention Facility, | |
| Respondent. | |

Petitioner Alcides Fernando Guerra Flores (A-240-567-506), a native of El Salvador who is proceeding without counsel, entered the United States in February 2022, and filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner was initially detained by Customs and Border Protection inside the United States in February 2022 and subsequently released.  On November 19, 2025, petitioner was re-detained and has been in continuous detention since this date.  This habeas action concerns petitioner's November 2025 re-detention.  For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.    FACTUAL BACKGROUND[2]

Petitioner is a 21-year old native/citizen of El Salvador, who was encountered in February 2022 and initially released on his own recognizance.  On August 15, 2023, petitioner was issued a Notice to Appear charging petitioner as an alien present in the U.S. without being admitted or paroled, pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").  (ECF No. 6-1 at 2 (Form I-213).)  On November 13, 2023, petitioner was enrolled in the ATD Intensive Supervision Appearance Program ("ISAP").  (Id.)

Petitioner has no criminal history.  (ECF No. 6-1 at 2.)  Petitioner attended high school for 11th and 12th grades, graduating with a 4.0 GPA and honors.  (ECF No. 1 at 7, 9-12.)  Petitioner was enrolled in a supervision program and checked in monthly with immigration authorities over the last two years.  (Id. at 6.)  Upon re-detention, petitioner was told he had program violations, but petitioner is not aware of such violations.  (Id. at 6.)

Petitioner is subject to standard removal proceedings under 8 U.S.C. § 1229, INA § 240.[3] (ECF No. 6 at 1.)

On November 19, 2025, petitioner reported for a check-in appointment at ISAP and was re-detained.  (ECF No. 6-1 at 2.)  Petitioner was not provided a pre-deprivation hearing or pre-deprivation notice of the basis for his detention.  (ECF No. 1 at 6.)  Petitioner has been in continuous detention since November 19, 2025.  (Id. at 4.)

## II.    PROCEDURAL BACKGROUND

On February 27, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.) On March 11, 2026, respondent timely filed a return to the petition for writ of habeas corpus. (ECF No. 6.)  Petitioner did not file a reply.  Briefing is now complete.

On March 17, 2026, petitioner filed a motion to proceed in forma pauperis.  (ECF No. 8.)

---

[2]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 8.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)). Respondent does not contest petitioner's factual allegations.  (See ECF No. 6.)

[3]  Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

Examination of the affidavit reveals petitioner is unable to afford the costs of this action. Accordingly, leave to proceed in forma pauperis is granted.  28 U.S.C. § 1915(a).

### III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

### IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner challenges his re-detention without notice and a hearing, which this Court construes as a Fifth Amendment due process claim challenging his re-detention.[4]  Petitioner also raises claims concerning the conditions of confinement and the significant financial burden his detention imposes on his family.  (ECF No. 1 at 6-7 (claims two through four.)  Respondent does not argue that petitioner is a flight risk or a danger to the community, or that petitioner has a criminal history.  (See ECF No. 6.)  Instead, respondent contends that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing.  (ECF No. 6 at

---

[4]  Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes petitioner's claim as a Fifth Amendment due process claim challenging his re-detention. There is no prejudice to respondent where respondent also address petitioner's claim as raising a due process violation.  (See ECF No. 6 at 1, 4.)

1-6.)  Respondent cites Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of their position that § 1225(b)(2)(A) applies here.  (Id. at 4.)  Respondent also argues that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id. at 5.)

### A.   Applicability of Section 1225 or Section 1226

The Court must first decide whether petitioner, who has no criminal record and has lived in the United States since 2022, is subject to discretionary release under § 1226(a), or whether petitioner is now subject to mandatory detention under § 1225(b)(2), as respondent argues.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing."  Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)).  Respondent contends § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 6 at 1-6.)

The Court concludes that § 1226(a) applies to petitioner.  First, Respondent agrees that after petitioner entered the United States in February 2022, immigration authorities initially detained petitioner and subsequently released petitioner.  (ECF No. 6 at 2.)  Pursuant to his release, petitioner regularly checked in with immigration authorities.  (ECF No. 1 6.)

Second, this Court agrees with and joins the majority of courts nationwide, including the

4

Eastern District of California, in rejecting respondent's new interpretation[5] of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of

---

[5]  Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

5

prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondent's reliance on Buenrostro-Mendez, 166 F.4th 494, is unavailing. In Buenrostro-Mendez, the Fifth Circuit recently agreed with the government's interpretation of § 1225(b)(2). This Court agrees with the district court in Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026):

> Two courts of appeal have addressed whether 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who have lived in the United States for years without having been admitted. See Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)); Buenrostro-Mendez v. Bondi, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (finding petitioners were subject to mandatory detention under § 1225(b)(2)(A)). Respondents cite to the Buenrostro-Mendez decision. Doc. 9 at 1. The Court finds the analysis in Castañon-Nava and in the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, the Buenrostro-Mendez decision did not address the due process claim at issue in the present case."

Gurvinder Singh, 2026 WL 413839, at *1 n.1. This Court does not find Buenrostro-Mendez to be persuasive for the reasons provided above. See also Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same). In addition, as in Gurvinder Singh, this Court finds that petitioner raises a due process claim, which the court in Buenrostro-Mendez did not address, and which the Court turns to next.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for

6

admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was released on his own recognizance pursuant to § 1226, he has resided in this country for over 3.5 years since his release in February 2022, and petitioner's November 2025 re-detention was not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)).  If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release.  Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  As such, petitioner should have been provided a bond hearing before his re-detention.

### B.    Due Process Claim

Liberally construed, petitioner contends he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment, and has a liberty interest in not being incarcerated after prior release without pre-custodial hearing or notice.  Respondent argues petitioner's due process claim fails because petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (ECF No. 6 at 5.) Respondent's arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec.

14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison."  Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty."  Id. at 481-84.

Here, petitioner's initial detention and subsequent release in February 2022 are similar

because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over 3.5 years.  Such time allowed petitioner to form "enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  Petitioner graduated from Bakersfield High School with a 4.0 GPA after receiving honors awards.  (ECF No. 1 at 7, 9-12.)  This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release was premised upon a finding that, at the time of petitioner's release, he was neither dangerous nor a flight risk.  See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4.  This Court concludes that petitioner has a protected liberty interest in his release.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to

removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 3.75 years, petitioner was free from custody before his re-detention. Petitioner completed his high school education, and intended to continue his education. (ECF No. 1 at 7.) Petitioner began working at the detention center to help ease his family's financial burden. (Id.) The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is

10

typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondent does not contend that petitioner is or was a flight risk or a danger to the community.  (See generally ECF No. 6.)  In addition, respondent does not contend that petitioner has a criminal record.  (Id.)

Here, petitioner has been detained since November 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was previously released by immigration authorities, he lived in the country for over 3.5 years on release, he has no criminal record, and the government does not contend that he is a danger or a flight risk.  See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondent points to no reasons

11

a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is entitled to relief on his due process claim.

### C.   Petitioner's Other Claims for Relief

In his petition, petitioner purports to bring claims concerning the poor living conditions at the detention center, including issues with receiving appropriate medication, dealing with anxiety related to untimely and noncompliant provision of medication, and spoiled food and undrinkable water.  (ECF No. 1 at 6-7 (claims two through three.)  Immigration records reflect petitioner reported he takes medication for epilepsy.  (ECF No. 6-1 at 2.)  Since being detained, petitioner was taken to the hospital emergency room on December 13, 2025.  (ECF No. 1 at 6.)  Petitioner also raises a claim based on the financial burden his detention imposes on his family.  (ECF No. 1 at 7 (claim four).  Because this Court recommends the petition be granted on due process grounds, the Court need not address petitioner's remaining claims.

### V.   CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on due process grounds.

IT IS HEREBY ORDERED that petitioner's motion to proceed in forma pauperis (ECF No. 8) is granted.

Further, IT IS RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondent be ordered to IMMEDIATELY release petitioner Alcides Fernando Guerra Flores, (A-240-567-506) and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondent has custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent shall return those to petitioner at the time of release.

3. Absent establishment of detention authority pursuant to 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231, respondent be enjoined and restrained from re-detaining petitioner

12

unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4. Given petitioner's pro se status, respondent be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.

5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 27, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/guer0627.157.2241.imm.rel

13